GLD-141                                     **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1151
_____

IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION
*Clyde F. Padgett,
Appellant

*(Pursuant to F.R.A.P. 12(a))
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Nos. 1-08-MDL-01935 & 1-09-cv-02132)
District Judge:  Honorable Christopher C. Conner
_____

Submitted on Appellees' Motion for Dismissal
for Lack of Jurisdiction or Lack of Merit
March 15, 2012
Before:  FUENTES, GREENAWAY, JR., and NYGAARD, Circuit Judges

(Opinion filed: March 20, 2012)
_____

OPINION
_____

PER CURIAM

        Clyde F. Padgett appeals an order of the District Court granting final approval to a

proposed class-action settlement between a subclass of Indirect End-User Plaintiffs ("IEU

Plaintiffs") and defendants/appellees Cadbury Holdings, Ltd., Cadbury plc, and Cadbury

Adams Canada, Inc. ("Cadbury").  Cadbury has moved to dismiss this appeal, arguing

that we lack appellate jurisdiction and that the appeal is frivolous. Although, for the following reasons, we determine that jurisdiction is properly vested in this Court, we will construe Cadbury's motion as requesting summary action under 3d Cir. LAR 27.4 and IOP 10.6 and will summarily affirm the order of the District Court.

I.

This appeal arises out of a class action in which the defendants were accused of conspiring "to fix the prices of chocolate confectionary products in the United States."[1] In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 548 (M.D. Pa. 2009). In August of 2011, the District Court granted preliminary motions of settlement approval for three plaintiff subclasses: direct purchasers for resale (ECF No. 1023[2]), IEU plaintiffs (ECF No. 1024), and indirect purchasers for resale (ECF No. 1025). The relevant District Court order defined the IEU class as:

> All persons and/or entities residing in the United States who indirectly purchased Chocolate Candy, for their own use and not for resale, from any Defendant or any predecessor, controlled subsidiary, affiliate or division of any Defendant, in, or for delivery into, any state that has enacted a statute extending standing to indirect purchasers asserting claims under state or local antitrust, unfair competition, consumer protection, unfair practices, trade practice, or civil conspiracy law

Order Granting Preliminary Approval of Proposed Settlement with the Cadbury Defendants ("IEU Preliminary Order") ¶ 1; see also Settlement Agreement ¶ 1, ECF No.

---

[1] As the parties are our principal audience, we will not discuss the factual background in depth.

991-1. Finding that the proposed settlement was "sufficiently fair, reasonable and adequate to authorize dissemination of notice to the Settlement Class," the Court directed plaintiffs' counsel to publish a Detailed Notice to the settlement class in several newspapers. IEU Preliminary Order ¶¶ 10, 13. It further instructed that any member of the class who wished to object to the settlement must do so in a signed, captioned writing sent to the "Court, Plaintiffs' Counsel, and Counsel for the Cadbury Defendants *postmarked no later than Monday, November 28, 2011*." IEU Preliminary Order ¶ 18 (emphasis added). Any objection must also "otherwise comply with the requirements set forth in the [Detailed] Notice." IEU Preliminary Order ¶ 18.

The "Detailed Notice," attached as Exhibit A, set out further instructions. Potential objectors were told to "mail [their] written objection[s], including proof of membership in the Settlement Class and a statement of the nature and grounds for your objection, to the Clerk of the Court," to be received and filed by a date to be determined.[3] IEU Detailed Notice ¶¶ 7–8, ECF No. 1024-1. As eventually published, the Detailed Notice required that objections be received by the Court "no later than November 28, 2011." See IEU Detailed Notice, available at http://www.chocolatesettlementindirect.com/documents/EU-DetailedNotice.pdf (last visited Mar. 5, 2012).

---

[2] All ECF numbers refer to entries on the docket for M.D. Pa. Civ. No. 1-08-MDL-01935.

[3] The placeholder language specified "within 135 days of the Preliminary Approval Date."

3

Appellant Padgett, who objected in writing to the terms of the proposed Settlement, described himself as a "pro se member of this class action lawsuit by being an indirect purchaser and consumer," although he enclosed no proof of his status. Padgett complained that the Settlement Agreement would not deter Cadbury from "continu[ing] its deceptive trade practices," cited the "problematic" nature of the "excessively broad release" contained in the Settlement Agreement, and railed against the use of the "complete settlement fund" to pay attorneys' fees. See Objection 1–2, ECF No. 1084. Despite his putative membership in the IEU class, Padgett referred instead to monetary figures from the proposed Settlement Agreement for the *direct-purchaser* plaintiff class, see Direct-Purchaser Detailed Notice ¶ 4, ECF No. 1023-1, and served his objection on the direct-purchaser attorneys instead of the IEU attorneys. Compare Objection 4, and Direct-Purchaser Detailed Notice ¶ 6, with IEU Detailed Notice ¶ 6. Padgett deposited his objection via Express Mail on November 23, 2011; delivery to the District Court was unsuccessfully attempted on November 26 (a Saturday) and November 28 (a Monday) before success on November 29. Counsel for the direct purchaser plaintiffs, whom Padgett had erroneously served, responded by requesting that his objection be overruled. See Response, ECF No. 1092.

On December 12, 2011, the District Court granted final approval of proposed class-action settlements with regard to three plaintiff subclasses, including the IEU class. See ECF Nos. 1105–07. While signed on December 12, the order relating to the IEU class—which did not reference or otherwise comment on Padgett's objections—was

entered one day later on December 13. See ECF No. 1107 docket text. Padgett's notice of appeal, ECF No. 1133, was received by the District Court on January 12.

## II.

In its motion to dismiss, Cadbury first argues that Padgett's notice of appeal was filed more than thirty days after entry of judgment, depriving us of jurisdiction. See 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A); Bowles v. Russell, 551 U.S. 205, 214 (2007). As noted above, however, judgment was entered as per the IEU plaintiffs on December *13*, not December 12. "[A]lthough an order may be signed by the district court, received by the clerk, and entered in the docket on different days, the entry date controls" for the purposes of determining timeliness. United States v. Fiorelli, 337 F.3d 282, 287 (3d Cir. 2003); see also Fed. R. Civ. P. 58(a). A notice of appeal is considered "filed" when it is received by the clerk's office. United States v. Solly, 545 F.2d 874, 876 (3d Cir. 1976). Padgett's notice of appeal was received by the District Court on January 12, 2012, thirty days later; it was therefore timely filed.

Cadbury next argues that Padgett's objection to the proposed settlement was neither timely nor proper, depriving him of the ability to appeal. But the District Court did not rule on the propriety of Padgett's objection, and we are hesitant to deem its structural faults to be per se fatal to our exercise of appellate jurisdiction, especially given an apparent inconsistency in when objections were to be received by the District Court.

In sum, we are satisfied that we have jurisdiction under 28 U.S.C. § 1291.

5

III.

Cadbury's final argument is that Padgett's objection is meritless and should be dismissed. On this ground, we are in accord. The objection is wanting, its content derived from figures present in a settlement agreement that was simply not applicable to plaintiffs in Padgett's (the IEU) class. As Cadbury points out, Padgett also misreads several sections of the Settlement Agreement. For example, Cadbury did not admit misconduct as part of the Settlement Agreement, and the Agreement hardly forestalled future legal action in "every possible scenario conceivable to man," as Padgett claimed. See, e.g., Settlement Agreement ¶ 36(a) (delineating the claims released); see also In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 366 (3d Cir. 2001) ("It is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself."). Padgett's vague objections and attacks on the financial stability of class counsel do nothing to shed light on any inequity contained in the Agreement. We therefore cannot find that the District Court abused its discretion in approving the IEU Settlement Agreement. See In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 256 (3d Cir. 2009).

IV.

For these reasons, to the extent Cadbury's motion requests dismissal of Padgett's appeal for lack of jurisdiction, the motion is denied. To the extent Cadbury's motion

6

seeks dismissal for lack of merit, it is treated as a motion for summary affirmance, and so treated, is granted because the appeal presents no substantial question. <u>Murray v. Bledsoe</u>, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).